LOCKWOOD MOTORS, INC., on behalf
of itself and all others similarly
situated, Plaintiff,

v.

GENERAL MOTORS CORPORATION,
Defendant.

Civ. No. 3–94–1141.

United States District Court,
D. Minnesota,
Third Division.

June 23, 1995.

As Corrected July 5, 1995.

# 572

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Lockwood Motors, Inc. ("Lockwood") commenced this unfair business action against General Motors Corporation ("GM") on behalf of all GM new automobile dealers in the State of Minnesota. Lockwood claims that it and similarly situated GM dealers have been and continue to be required to contribute to a GM advertising fund in violation of the Federal Automobile Dealers' Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221–1225, and the Minnesota Motor Vehicle Sale and Distribution Act ("MMVSDA"), Minnesota Statutes section 80E.12. This matter is currently before the Court on Lockwood's Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Lockwood seeks to represent all Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile, and Pontiac dealers in Minnesota who were required to contribute to a GM advertising fund from 1988 to the present. For the reasons set forth below, the Court will grant Lockwood's Motion and certify the proffered class.

### Background

Plaintiff Lockwood is a Minnesota corporation with its principal place of business in Marshall, Minnesota. Lockwood is a licensed and franchised GM Cadillac and Oldsmobile new vehicle dealer. Defendant GM is a Delaware corporation with its principal place of business in Detroit, Michigan. GM manufactures, assembles and distributes new vehicles through its Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile and Pontiac divisions, which are unincorporated operating divisions of GM.

Lockwood commenced this action on October 10, 1994. In its Complaint, Lockwood alleges GM imposes a mandatory advertising charge on each new vehicle purchased by putative class members as part of a "marketing initiative." (Compl. ¶ 11.) This advertising charge is equal to 1% of the manufacturers suggested retail price ("MSRP") and is

Richard A. Lockridge and Jean K. Janes, Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN; Michael B. Hyman and John H. Ward, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL; Paul I. Guest, Jr., Guest Law Office, Paoli, PA; Joseph C. Kohn, Steven A. Asher and Martin J. D'Urso, Kohn, Swift & Graf, Philadelphia, PA; and James C. Garland and Michael H. Freeman, Frasier & Frasier, Tulsa, OK, for plaintiff.

James S. Simonson and John L. Krenn, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN and Michael H. Carpenter and Jeffery A. Lipps, Zeiger, Dreher & Carpenter, Columbus, OH, for defendant.

allegedly uniformly imposed on all licensed and franchised Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile and Pontiac dealers. (*Id.* ¶¶ 5–9, 11.) Lockwood claims dealers are "required" to pay the 1% mandatory marketing charge, dealers who do not pay this charge are not permitted to purchase new GM vehicles, and monies collected from the advertising charge were "intended ... itemized, targeted, obligated, and exclusively used in payment of advertising campaigns." (*Id.* ¶¶ 12–14.)

Based upon these claims, Lockwood seeks to certify the following class:

> All persons who were licensed and franchised Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile and Pontiac new vehicle dealers in Minnesota from the effective date of each marketing initiative [1] through the present time, excluding defendant, its affiliates, divisions and subsidiaries.

(*Id.* ¶ 15.) Lockwood claims that GM's 1% advertising charge violates the ADDCA [2] and the MMVSDA [3] and that as a result, it and the putative class members it seeks to represent are entitled to compensatory damages, injunctive relief, costs and attorneys' fees. Lockwood maintains that certification of this class is warranted because: (1) class members are so numerous that joinder is impracticable; (2) its claims are typical of the class it seeks to represent; (3) it will fairly and adequately protect the interests of the class; (4) its claims involve issues of law and fact common to the class, and these common issues predominate over individual issues unique to any particular class member or members; and (5) a class action is the most efficient method for resolving its claims. (Compl. ¶ 16.) GM opposes Lockwood's Mo-

tion and maintains that Lockwood has not satisfied the applicable requirements for class certification.

This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1222 and 28 U.S.C. §§ 1331 and 1332.

## Discussion

### A. Class Certification

■■ The requirements for class certification are set forth in Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs have the burden of establishing they have satisfied each of Rule 23's class certification requirements. *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 659 (D.Minn.1991). The Court may certify the class only when it is satisfied "after rigorous analysis" that all of Rule 23's prerequisites are met. *Jenson,* 139 F.R.D. at 659. In making the Rule 23 analysis, the substantive allegations in the plaintiff's complaint are accepted as true. *Jackson v. Rapps,* 132 F.R.D. 226, 230 (W.D.Mo.1990); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) (explaining that courts do not have authority to "conduct a preliminary inquiry into the merits of a suit in determining whether it may be maintained as a class action"). District courts ultimately retain broad discretion in determining whether or not to certify a class under Rule 23. *General Telephone Co. v. Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *In re Workers' Compensation,* 130 F.R.D. 99, 103 (D.Minn. 1990).

---

1. Lockwood alleges the 1% MSRP charges were instituted for Chevrolet and GMC Truck dealers on September 1, 1988; Cadillac and Oldsmobile dealers in July, 1989; Pontiac dealers in July, 1990; and Buick dealers on August 1, 1990. (Compl. ¶¶ 5–9.)

2. *Section 1222 of the ADDCA provides in part:*
   An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the

cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer.
15 U.S.C. § 1222.

3. Section 80E.12(d) of the MMVSDA makes it unlawful for any manufacturer to "require a new motor vehicle dealer to ... participate monetarily in an advertising campaign or contest ... at the expense of the new motor vehicle dealer." Minn.Stat. § 80E.12(d).

■ As a threshold matter, GM argues the Rule 23 analysis does not apply because Lockwood lacks standing to pursue claims on behalf of the class. GM claims Lockwood is not a "member" of the purported class because it is not a Buick, Chevrolet, GMC Truck or Pontiac dealer. GM contends that only dealers from these particular divisions have standing to contest the 1% advertising charge collected from their respective divisions, and that Lockwood therefore lacks standing to represent these dealers.

■ GM's challenge to Lockwood's standing in this case is not persuasive. Notwithstanding GM's claims, by its express terms, Lockwood is clearly a "member" of the proffered class. Based on the allegations in the Complaint, Lockwood, like the dealers he seeks to represent, has been illegally required to pay the 1% advertising charge and seeks to vindicate the rights of all dealers who similarly have been illegally required to make this payment. The fact that other dealers were required to pay the charge at a different time or based on a different brand of GM vehicle does not affect the existence of this injury. Insofar as Lockwood has a personal stake in this litigation, based on an actual "case or controversy" with GM which is redressable by a favorable decision, he unquestionably has "standing." *See Valley Forge Christian College v. Americans for Separation of Church and State,* 454 U.S. 464, 472–73, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982); *Casey v. Lewis,* 4 F.3d 1516, 1519 (9th Cir.1993); *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993); *see generally* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 2.05 (3d ed. 1992). Although GM maintains that Lockwood's injury is not similar or typical to the purported injury of the other dealer members, the degree to which Lockwood's alleged injury differs from the other class members is not an issue of threshold standing, but rather is properly assessed under the criteria set forth in Rule 23. *See* Newberg, *Class Actions* § 2.05 at 2–29–30.

### B. Rule 23(a) Analysis

Rule 23(a) of the Federal Rules of Civil Procedure sets out four preliminary requirements for class certification. In order to be certified as a class, Rule 23(a) requires a member of the purported class to show:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The Court will consider each of these in turn.

#### 1. Numerosity

■ The first requirement of Rule 23(a) requires a plaintiff to show the class of plaintiffs is so large that joinder of all members would be "impracticable." *In re Federal Skywalk Cases,* 680 F.2d 1175, 1178 (8th Cir.1982). Lockwood need not show joinder is impossible, rather he must demonstrate joining all members of the class would be difficult. *See Jenson v. Continental Fin. Corp.,* 404 F.Supp. 806, 809 (D.Minn.1975). There is no absolute number that satisfies the numerosity requirement. *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 664 (D.Minn.1991.) However, commentators have recognized that:

Certainly, where the class is very large—for example numbering in the hundreds—joinder will be impracticable. . . . In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.

Newberg, *Class Actions* § 3.05 at 3–25; *see also* 3B *Moore's Federal Practice* ¶ 23.05[1] at 23–143–45 (2d ed. 1995) ("while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred . . . have sustained the [Rule 23(a)(1)] requirement") (collecting cases).

GM contends that joinder is practicable because "each dealer is known and readily identifiable by name and address, each is easily subject to service of process and notice, each is in Minnesota, and each is a substantial, independent business enterprise." (Def.'s Mem. in Opp. to Mot. at 13.) In this case, however, GM itself has submitted evidence which suggests there are 440 GM dealers included in the proposed class (*see* Def.'s Mem. in Opp. to Mot. at 13); this figure does not include Buick dealers—of which Lockwood has provided evidence to show that there are 96 (Pl.'s Mem. in Supp. of Mot., Ex. D)—or former GM dealers.[4] In the face of these numbers, the Court is confident joinder would unquestionably be difficult, if not impossible. The numerosity requirement has been satisfied.

### 2. Commonality

The second requirement of Rule 23(a) requires a plaintiff to show "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Not every question of law or fact need be common to the class to satisfy the requirements of Rule 23(a)(2). Instead, Rule 23(a)(2) requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993); *see generally* Newberg, *Class Actions* § 3.10 at 3–50 (observing that "[t]he test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need be only a single issue common to all members of the class ... this requirement is easily met in most cases") (citing cases).

Whether the 1% MSRP advertising contribution scheme is a lawful price increase or prohibited advertising campaign under ADDCA and MMVSDA is the central question of law in this case. Although the dates on which dealers began paying this additional charge differ, this issue is common to all members of the class insofar as each dealer was required to pay an additional 1% of the MSRP in order to purchase new vehicles from GM—regardless of the brand—and such a requirement is purportedly illegal. The extent to which individual questions may or may not predominate over this common issue will be addressed under the rubric of Rule 23(b). For the purposes of Rule 23(a), however, Lockwood has demonstrated a common question of law or fact.

### 3. Typicality

The third requirement of Rule 23(a) requires a plaintiff to prove "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality is satisfied "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *In re Workers' Compensation*, 130 F.R.D. 99, 105 (D.Minn.1990) (*quoting Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 132–33 (D.Minn. 1985)). Thus a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985).

In the present case, Lockwood's claims and the claims of the putative class emanate from the same legal theory, namely violation of ADDCA and MMVSDA through the imposition of a required 1% MSRP assessment on new GM vehicles. GM argues that Lockwood's claims are atypical due to:

(1) Lockwood's lack of franchise rights in four of the GM product lines; (2) its geographical isolation and monopolistic control over the local market in the lines it does hold; (3) the relatively small portion of Lockwood's overall vehicle sales that are generated by the sale of GM vehicles (one-third) verses non-GM vehicles (two-thirds); (4) the fact that it does not sell any new GM light trucks; (5) Lockwood's rejection of television advertising; (6) its relatively small sales; (7) Lockwood's failure to uti-

---

**4.** Lockwood has provided the names of at least 211 specific dealers included within the proffered class. (*See* Janes Aff., Ex. 37.)

lize the reimbursement and bonus features of the marketing initiatives and/or programs; and (9) Lockwood's minority position regarding group marketing.

(Def.'s Mem. in Opp. to Mot. at 34.) These differences, although no doubt "atypical" to some class members, are not atypical with respect to the material claims alleged in Lockwood's Complaint. Lockwood alleges the mandatory 1% MSRP assessment is universal and uniform for all GM dealers; is applied equally to single-line and multi-line, rural and urban, and large or small dealers; and does not depend upon exclusive GM sales or use of other GM marketing incentives or programs. With respect to this 1% assessment, GM has offered no evidence to place Lockwood's claims of "typicality" in doubt. The differences upon which GM relies are differences incidental to the single legal theory and conduct upon which Lockwood's claims and the class certification motion are predicated, and thus Rule 23(a)(3) is satisfied. *See In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1036 (N.D.Miss.1993) (explaining "[t]he diversity of named plaintiffs who differ in their methods of operation and conduct is often cited by defendants as an impediment to class certification. However, as long as the substance of their claim is the same as it would be for other class members, then the named plaintiffs are not atypical") (citing cases); *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y.1982) (explaining "[t]here has been general agreement that the existence of varying fact patterns to support the claims of individual class members does not mandate a finding of lack of typicality, as long as the claims arise out of the same legal or remedial theory") (citing cases).

### 4. Adequacy

■ The fourth requirement of Rule 23(a) requires a plaintiff to show that the named representative or representatives will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In order to satisfy this requirement, Lockwood must show that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge. *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268, 270 (D.Minn.1989); *see also In Re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1037 (N.D.Miss.1993) (explaining that "[a]dequate representation turns upon the qualifications and experience of plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class").

■ GM contests certification on both facets of the Rule 23(a)(4) analysis. GM's challenge to the adequacy of counsel is without merit and will be summarily rejected. Plaintiff's counsel have substantial experience in class action litigation similar to the case at bar, and have thus far demonstrated competent and vigorous prosecution of Plaintiff's claims.[5] With regard to the second component of this Rule, GM contends that Lockwood's interests conflict with interests of the class as a whole because (1) putative class members have provided affidavits stating they do not support this litigation, (2) Lockwood operates in an insulated environment and is in a "unique position regarding group marketing," [6] (3) Lockwood cannot adequately represent the interests of the Buick, Chevrolet, GMC Truck and Pontiac dealers because he is only licensed to sell Cadillac and Oldsmobile products, (4) Lockwood sells non-GM products, (5) Lockwood's interests conflict with higher volume dealers in more populous areas, and (6) Lockwood is not familiar with GM's various marketing initiatives and programs.

---

5. GM has emphasized, repeatedly, that Lockwood has retained "out-of-state" counsel. This does not, in anyway, portend inadequacy. Suffice it to say that, apart from this District's pro hac vice conditions, the doors of this federal court, as with the rest of the federal courts in the country, are open to licensed attorneys.

6. Lockwood has chosen not to participate in a dealer marketing association. A dealer marketing association is a consortium of dealers who pool resources to market their GM automobiles. According to GM, a significant majority of dealers belong to these associations.

### i. Dealer Affidavits

The affidavits provided by the absent dealers have been a source of substantial collateral conflict between the parties in this action and the subject of extensive briefing before the Court. Lockwood maintains these affidavits were "extracted from economically vulnerable dealers," on the basis of false and misleading information, as part of an eleventh hour "intense pressure campaign." (Pl.'s Reply Mem. at 2.) Lockwood claims that on April 18, 1995, GM had procured only nine affidavits from dealers ostensibly opposing this litigation. (*See* Janes Aff., Ex. 9.) On that date, Lockwood filed a motion to prohibit further contact between GM and members of the putative class. Prior to the hearing of that motion—within four days after it was noticed—GM procured an additional forty-six such affidavits. (*Id.*) The vast majority of these affidavits are identical, apart from the dealership and affiant's names.[7] Lockwood subsequently withdrew its motion, claiming GM's actions immediately following the filing of its motion rendered the relief sought moot. Lockwood currently argues that the content and circumstances surrounding the acquisition of these affidavits render them untrustworthy, and that the Court should accordingly exclude them from its consideration of the present certification Motion.[8]

7. These affidavits are in fact substantially identical to "form" affidavits GM apparently solicited from dealers in a similar action filed in the Northern District of Mississippi. (*See* Janes Aff., Ex. 5.)

8. In support of its claim, Lockwood quotes extensively from *Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir.1985). In *Kleiner*, in response to the defendant Bank's attempt to procure class exclusion requests from its customers, who were members of the plaintiff class, the Eleventh Circuit cautioned:

> A unilateral communications scheme . . . is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive. (citation omitted)

> .  .  .  .  .

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a

GM has similarly accused Plaintiff's counsel of making improper contact with putative class members. GM bases this claim on the following conduct. On April 18, 1995, counsel for the Minnesota Automobile Dealer Association ("MADA") mailed a "special legal notice" to various Minnesota GM dealers. (*See* Schutjer Dep. Ex. 1, attach. to May 26 Krenn Aff., Ex. A.) After stating that Lockwood had initiated a lawsuit against GM regarding GM's "mandatory advertising fees," the notice stated:

> [Lockwood's] attorneys advised MADA that GM dealers in Minnesota should anticipate being contacted by GM representatives attempting to convince them not to participate in the Minnesota class action. MADA has, in fact, been advised that such contacts have begun.

> MADA is not in a position to recommend to Minnesota dealers to participate in the lawsuit or to opt out. We can, however, report that in Pennsylvania, fewer than 5 percent of the dealers opted out. In Pennsylvania, General Motors did apparently obtain a handful of affidavits from selected dealers opposing the lawsuit.

(*Id.*) In preparing this notice, counsel for MADA used information from a "press release" an attorney for Lockwood mailed to various state Dealer Associations in March, 1995. (*Id.*, Ex. 4.)

one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable. (citation omitted) Concomitantly, a solicitations scheme relegates the essential supervision of the Court to the status of an "afterthought." *Id.* at 1202–03. In affirming the district court's finding that the forms obtained by the defendant were unenforceable, *Kleiner* further emphasized "it is critical that the class receive accurate and impartial information regarding the status, purposes, and effects of the class action." *Id.* at 1202. The Eleventh Circuit's admonition in *Kleiner* is correct, yet not directly appropriate here. Importantly, the unilateral solicitations in *Kleiner* occurred *after* the plaintiff class had been certified and prior to the issuance of the Rule 23(c)(2) class notice. The Court also notes GM's alleged solicitation campaign is not on the level of the defendant's ex parte contacts in *Kleiner*. Nevertheless, *Kleiner*'s analysis regarding ex parte contact with members of a certified class is well-received, and the parties are put on notice the prohibitions against such contacts will be strictly enforced.

GM contends that Plaintiff's attorney's involvement with MADA's "special legal notice" demonstrates counsel was "clearly involved in an inappropriate effort to preclude GM from obtaining truthful evidence" thereby calling into question counsel's ability to ethically and adequately represent the class, and that the "special legal notice" demonstrates the dealer affidavits should be accorded special consideration. (Def.'s Suppl.Mem. at 10.)

Despite GM's claims, the link between the MADA notice and the Rule 23 certification issues raised in the present Motion is attenuated at best. With regard to GM's first contention, the "special legal notice" does not demonstrate inadequacy. GM has been less than candid in its recitation of the facts surrounding this notice. The unrefuted evidence shows that Lockwood's counsel did not request or suggest MADA prepare this notice, did not participate in its preparation, and in fact did not see the notice or discover its contents until after it was mailed. (See Schutjer Dep. at 12–16, 32, 38, 63, 109, attach. to May 26 Krenn Aff., Ex. A.) Moreover, unlike the dealers GM solicited, MADA is not a putative class member in this action. The fact that MADA chose to contact putative class members on its own initiative is by itself immaterial. With regard to its second contention, GM argues that the dealer affidavits it has submitted should be given special weight because they were executed in spite of the "special legal notice." This contention is similarly unpersuasive. First, GM has not demonstrated the dealers who executed the affidavits were among those dealers to whom the notice was mailed. Second, even if the affiant-dealers had received the notice, it is not clear they received and had an opportunity to review the notice prior to executing the affidavits; the notice was mailed on April 18. GM received the majority of the affidavits between April 18 and April 24.

Based on the circumstances of this case, the parties' arguments relating to the propriety or impropriety of the dealer affidavits are to a large degree irrelevant. The Court need not "disregard" these affidavits in order to certify the proffered class.

The question before the Court is not whether these affidavits are reliable, the question is whether they demonstrate preclusive conflict among class members. The Court finds they do not. As a general rule, the fact that some members of a putative class object to the lawsuit is not sufficient to preclude certification under Rule 23(a)(4). Newberg, *Class Actions* § 3.30 at 3–150 (citing cases). In this case, there is no evidence that legally protectable interests of the member dealers will be adversely affected by this lawsuit. Contrary to the allusions in GM's Memoranda, this lawsuit does not challenge the myriad voluntary marketing plans, initiatives and consortium programs in which various dealers participate. It also does not pursue interest "at the expense of" other class members. *Compare id.* § 3.26 at 3–145. Instead, it challenges only the uniform 1% MSRP assessment. The fact that some dealers benefit from or prefer this marketing program does not demonstrate an impermissible conflict. *See In re Potash Antitrust Litig.,* 159 F.R.D. 682, 692 (D.Minn.1995); 3B *Moore's Federal Practice* ¶ 23.06–2 at 23–182 (2d ed. 1995) (a court is not authorized to dismiss a class action based upon a substantial legal claim merely because some members of the class prefer to leave the violation of their rights unremedied). Assuming true the allegations in the Complaint, the method, albeit desirable to various dealers, is illegal. The dealers' opinions, regarding the utility of this scheme, are thus not dispositive in reaching a certification decision, nor is their desire to leave their statutory rights unremedied.

Moreover, the dealers who are opposed to this lawsuit may "opt out" of the class pursuant to the procedure set forth in Rule 23(c). The class represents a readily identifiable, finite group of plaintiffs, and determining those dealers who wish to opt out is neither impracticable nor onerous. *See Race Buick–Pontiac–Cadillac–Oldsmobile–GMC, Inc. v. General Motors Corp.,* C.A. No. 94–25–Erie, slip op. at 10 (W.D.Pa. Oct. 11, 1994), (attach. to Dec. 12, 1994 Janes Aff., Ex. A) (finding "opt-out" procedure sufficient to remedy "differences of opinion" among dealers challeng-

ing GM's 1% MSRP assessment).[9] Indeed, as indicated previously, GM maintains "each dealer is known and readily identifiable by name and address [and] each is easily subject to service of process and notice." (Def.'s Mem. in Opp. to Mot. at 13.) The Court therefore finds that the dealer affidavits do not demonstrate a "conflict" within the meaning of Rule 23(a)(4).

### ii. Factual Differences Among Dealers

In addition to the opposition reflected in the GM's dealer affidavits, GM claims there is an irreconcilable conflict between Lockwood and the dealers he seeks to represent because he sells in a different market, does not exclusively sell GM brands, is only licensed to sell Cadillac and Oldsmobile products and is not familiar with GM's various marketing initiative and programs. GM's claims do not demonstrate a prohibitive conflict under Rule 23.

As discussed in greater detail throughout this Memorandum Opinion, each dealer is required to pay the 1% MSRP assessment irrespective of location, size, use of other GM market strategies, or whether it is a Buick, Pontiac, Cadillac, Oldsmobile, GMC Truck or Chevrolet dealer. Having concluded the dealers do not have a protectable interest in the challenged marketing scheme, assuming it is illegal, the differences between rural and urban dealers, large and small volume dealers, and dealers who utilize additional GM marketing plans is not an "antagonistic" interest. GM's claims based on Lockwood's product lines are similarly unpersuasive. Although Lockwood sells vehicles manufactured by Chrysler Corporation, GM products account for one-third of Lockwood's inventory. This represents a significant portion of his business and commensurate economic in-

terest in this litigation. The fact that other dealers may have a proportionally greater economic interest does not create *adversity* among the Plaintiffs.[10] Finally, Lockwood's familiarity with GM's voluntary advertising initiatives have no bearing on his adequacy to vigorously pursue the challenged initiative. While plaintiffs who lack familiarity with the "material" aspects of their lawsuit may be inadequate representatives of a proffered class, *e.g. Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1214 (D.Minn.1987), *aff'd*, 902 F.2d 1571 (8th Cir.1990), the various voluntary marketing programs GM offers to dealers are not "material" in this litigation. The sole program Lockwood has challenged is the 1% MSRP assessment, and Lockwood has demonstrated adequate familiarity with this program.

Based on the foregoing, the Court finds Lockwood has satisfied Rule 23(a)(4)'s requirements. Neither the dealer affidavits nor the various incidental factual differences among putative class members create an impermissible conflict. The Court will accordingly proceed to the second portion of the Rule 23 analysis.

### C. Rule 23(b) Analysis

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). Lockwood claims it has satisfied Rule 23(b)(3), which requires (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

---

9. *Race* involved a class challenge to GM's 1% MSRP assessment under the ADDCA and the Pennsylvania Board of Vehicles Act, 63 Pa.C.S.A. §§ 818.1–818.28. The claims raised against GM in *Race* are substantially identical to the claims raised in the present case. *Race* granted the plaintiff's certification motion and certified the following class:

All persons who were licensed and franchised Buick, Pontiac, Cadillac, Oldsmobile or GMC Truck new vehicle dealers in Pennsylvania at any time from August 1, 1988 through Decem-

ber 31, 1993, excluding defendant, its affiliates, divisions and subsidiaries.
*Race Buick–Pontiac–Cadillac–Oldsmobile–GMC, Inc. v. General Motors Corp.*, C.A. No. 94–25–Erie (W.D.Pa. Oct. 11, 1994), (attach. to Dec. 12, 1994 Janes Aff., Ex. A).

10. Carrying product lines from several manufacturers is not anomalous in the automotive industry, and in fact several of the dealers who submitted affidavits opposing certification in this action are not exclusively GM dealers.

### 1. Predominance

■ There are no bright lines for determining whether common questions predominate. *In re Workers' Compensation,* 130 F.R.D. 99, 108 (D.Minn.1990); 7A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure,* § 1778 at 526 (2d ed. 1986 & Supp.1994). Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. *In re Workers' Compensation,* 130 F.R.D. at 108 (citing *In re Indus. Gas Antitrust Litig.,* 100 F.R.D. 280, 288 (D.C.Ill.1983)). Common questions need only predominate; they need not be dispositive of the litigation. *In re Infant Formula Antitrust Litig.,* MDL No. 878, 1992 WL 503465 at *6 (N.D.Fla.1992); 7A Wright, Miller & Kane *Federal Practice and Procedure,* § 1778 at 528–29 ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.") Thus "the fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." 3B *Moore's Federal Practice* ¶ 23.45[2] at 23–306 to 23–307 (2nd ed. 1995). GM claims that individual issues predominate over issues common to the class because plaintiffs must individually demonstrate they were "coerced" into participating in the 1% MSRP program under both ADDCA and MMVSDA, and that damages will be different for each dealer.

■ A violation of ADDCA requires a finding of coercion or intimidation or threat of coercion or intimidation. *Bob Maxfield, Inc. v. American Motors, Corp.,* 637 F.2d 1033, 1038 (5th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981); *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608, 610 (7th Cir.) (holding that the ADDCA "does not provide a new remedy for breach of contract but creates a new cause of action, an indispensable element of which is ... a lack of good faith in which coercion, intimidation, or threats thereof, are at least implicit"), *cert. denied,* 409 U.S. 981, 93 S.Ct. 317, 34 L.Ed.2d 245 (1972).

■ GM argues that "coercion" is necessarily an individualized inquiry which will predominate over issues common to the class. Several courts have recognized that common questions will not predominate under Rule 23(b) when class plaintiffs must individually prove coercion. *See, e.g., Waldo v. North Am. Van Lines,* 102 F.R.D. 807, 814 (W.D.Pa.1994); *Hewitt v. Joyce Beverages, Inc.,* 97 F.R.D. 350 (N.D.Ill.1982), *aff'd,* 721 F.2d 625 (7th Cir.1983). However, the need to prove coercion will not necessarily prevent a finding of predominance under Rule 23(b). Instead, coercion may be implied on a class-wide basis when evidenced by a uniform agreement common to the class. For example, in *Sunrise Toyota, Ltd. v. Toyota Motor Co.,* 55 F.R.D. 519 (S.D.N.Y.1972), plaintiff Toyota dealers alleged the defendant manufacturers "failed to act in good faith and keep dealers free from coercion" in violation the ADDCA by, *inter alia,* imposing an assessment of $35 on each vehicle the manufacturers sold in order to purchase Toyota advertising. In considering whether the dealers' claims satisfied Rule 23(b), the court relied on the fact that the dealers appeared to have substantially the same dealership contracts, and determined the class claims raised common questions as to whether the defendants engaged in coercive advertising assessments against all the dealers and how the advertising funds were collected and used. *Id.* at 533. The court concluded the dealers' claims satisfied the requirements of Rule 23(b) and certified the class. The Third Circuit has similarly held that coercion may be proved on a class-wide basis, explaining that coercion may be established on a class-wide basis when plaintiffs' claims are based upon a uniform agreement common to class members.[11]

---

11. Under *Bogosian* and its progeny, coercion can be established on a class-wide basis in order to prove an illegal tie-in, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, when a defendant expressly conditions the sale of one product upon the purchase of another. In the present

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 450 (3rd Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *see also Little Caesar Enter., Inc. v. Smith*, 1995 WL 235248 at *10 n. 7 (E.D.Mich., April 19, 1995) (noting "where there is an express contractual tying arrangement, or where the practical economic effects flowing from the contract clauses and other common proofs establish a tie, individual proof of coercion is not necessary, and common proof of the tie in can be made") (citing cases); *Rental Car of New Hampshire, Inc. v. Westinghouse Elec. Corp.*, 496 F.Supp. 373, 378 (D.Mass.1980) (finding express provisions of uniform franchise contract sufficient to prove coercion on a class-wide basis); *cf. Waldo*, 102 F.R.D. at 814 (holding that, in the absence of an express contractual provision, individual proof of coercion was necessary to prove antitrust violation and thus Rule 23(b) precluded certification).

■ In the present case, Lockwood alleges GM violated the ADDCA by requiring dealers to pay the 1% MSRP assessment in order to purchase new GM vehicles. Mindful that it must accept the merits of Lockwood's allegations as true when considering a motion for class certification, the Court finds this claim is sufficient to establish coercion and is susceptible of common proof. GM has conditioned the sale of one product, its new vehicles, on the purchase of another, its marketing and advertising services. According to Lockwood, the 1% MSRP assessment is mandatory, uniformly applied to all GM dealers, expressly contained in substantially identical sales agreements. (*See* Janes Aff., Ex. 12.) Like the class proof of coercion discussed in *Bogosian*, the facts relating to the terms and conditions of GM's new vehicle sales with respect to the challenged 1% MSRP assessment in this case are susceptible of common proof. Thus the Court finds common issues relating to legality of GM's sale agreements under the ADDCA relate to a "common grievance" among class members which will predominate over individual questions which may arise.[12]

■ The Court also finds that common issues of fact or law will predominate with respect to Lockwood's MMVSDA claims. In order to prove a violation of the MMVSDA, plaintiffs must show they were "required" to "participate monetarily in an advertising campaign or contest" at their own expense. Minn.Stat. § 80E.12(d). For the same reasons discussed in relation to Lockwood's ADDCA claim, common issues of fact and law predominate with respect to proving this claim. Like "coercion," whether the plaintiffs were "required" to participate in an advertising campaign need not be proven on an individual basis when expressly reflected in a uniform agreement. The Court is presently satisfied the remaining elements of a MMVSDA claim may be proven on a class-wide basis, and that common questions predominate with respect to this claim.

### 2. Damages

■ Differences which may arise in calculating the amount of individual damages

case, GM argues that coercion cannot be established to prove a violation of the ADDCA because the ADDCA requires proof of "actual coercion." However, in *Bob Maxfield, Inc. v. American Motors Corp.*, 637 F.2d 1033 (5th Cir.), the case GM relies upon for this position, the Fifth Circuit also held that "actual coercion is an indispensable element of a tie-in charge." *Id.* at 1037. Since an express conditioning of the sale of one product on the purchase of another is sufficient to prove "actual coercion" on a class-wide basis for a tie-in charge, it may suffice to prove "actual coercion" for the purposes of ADDCA. Indeed, at least one court has explicitly recognized the ADDCA "reaches those activities of an automobile manufacturer which would constitute an unreasonable restraint of trade under the Sherman Act or another invalid trade practice. In the lack of good faith evaluation the presence or absence of such invalid trade practices is, of course, a foremost consideration." *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*, 533 F.2d 510, 516 (10th Cir.1976).

12. The Court is in accord with *Race Buick–Pontiac–Cadillac–Oldsmobile–GMC, Inc. v. General Motors Corp.*, No. 94–25–E, (W.D.Pa. Oct. 11, 1994), which concluded common issues predominated under Rule 23(b)(3) and certified a class of GM dealers challenging GM's 1% MSRP assessment under the ADDCA and Pennsylvania state law and *Kasper Buick–GMC Truck et. al. v. General Motors Corp.*, No. C–2–88–944, (S.D.Ohio Aug. 2, 1989), which concluded common issues predominated under Rule 23(b)(2) and certified a class of GM dealers challenging GM's 1% MSRP assessment under the ADDCA and Ohio state law.

plaintiffs may have sustained will not prevent certification under Rule 23(b). Courts routinely find Rule 23(b)(3)'s predominance requirement satisfied despite the need for individualized damage determinations when the "fact" of injury is common. *See, e.g. In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D.Minn.1995); *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1042 (N.D.Miss.1993); Newberg, *Class Actions* § 4.26 at 4–90–91 & n. 264 (citing cases). GM contends that "[w]hile courts have found that the need to calculate the *amount of damages* individually will normally not destroy commonality, where the *existence of damage* or *fact of injury* ... varies from dealer to dealer the claims will not be common and predominance will not be satisfied." (Def.'s Mem. in Opp. to Mot. at 30.) GM relies upon the purported need to examine individual dealer performance evidence in order to show this "fact" of injury. However, the injury common to the class in this case is not the net profitability of GM's marketing plan to the various dealers, the common injury is the deprivation of the freedom to choose purchasing GM's marketing services. Although individual damage amounts may not be susceptible to common proof, this injury is.[13]

### 2. Superiority

 Rule 23(b)(3) requires plaintiffs to demonstrate "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). Having concluded that common questions predominate, this requirement is readily satisfied in this case. Class prosecution of this action will limit duplicative litigation, limit the burden on this and other courts, and provide a uniform result for similarly situated parties.

### D. Summary

The Plaintiff has satisfied the requirements set forth in Rule 23 and the Court will grant its certification Motion. In doing so, however, the Court makes several important observations. First, the Plaintiff has proposed no uniform methodology for proving damages, and the Court accordingly makes no findings with respect to whether damages may be litigated on a class-wide basis should such determination become necessary. Second, the merits of the Plaintiff's claims are not currently before the Court. Both the ADDCA and the MMVSDA claims raise apparently novel issues. Although the Court has considered the substance of these claims to the extent required under the Rule 23(b)(3) analysis, the Court makes no final judgment that the common proof offered, if successful, will prove a violation of either Act. The Court will await making such determination until it is raised. Finally, the Court stresses that it retains great discretion in managing this proceeding. If the Court later determines class treatment becomes inappropriate or not in the best interests of the Court or the parties, the Court will not hesitate to take whatever remedial steps it deems appropriate, including decertification.

### Conclusion

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that Plaintiff's Motion for Class Certification (Doc. No. 11) of a class consisting of:

> All persons who were licensed and franchised Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile and Pontiac new vehicle dealers in Minnesota from the effective dates of each marketing initiative through the present time excluding defendant, its affiliates, divisions and subsidiaries

is **GRANTED.**

---

**13.** Thus in a related context, one court has recently observed:

> Where there is an express contractual provision requiring [the] buyer to buy the goods from the seller-defendant, it is clear that the buyer has been deprived of his freedom of choice in the market of the tied product.... Once this loss of freedom ("coercion") is established for tying law, courts need make no further inquiry into the subjective state of mind of the buyer to determine whether he or she was actually coerced as an individual matter, or whether the buyer would have bought the tied product from the defendant seller in a free market ("individual coercion").

*Little Caesar*, 1995 WL 235248 at *12. The plaintiffs in *Little Caesar* alleged a Sherman Act violation.