JOURNAL ENTRY AND OPINION
Plaintiff-appellant Kathryn Harlow Holznagel appeals from the order of the trial court declining to certify a class action against defendant-appellee Charter One Bank, F.S.B. on claims that defendant Bank charged a prepayment of loan penalty to residential mortgage borrowers despite contractual terms of the loan that excused such penalty. We find the trial court erred, in part, in denying class certification on alleged contract claims. We affirm in part and reverse and remand in part for the reasons hereinafter stated.
Plaintiff borrowed $28,500 from Charter One on December 23, 1993 in order to finance the purchase of her home. The parties entered into a mortgage loan agreement and executed an Amendment to Note. The Amendment to Note contained provisions allowing for the early prepayment of the loan. This provision stated as follows:
Prepayment provisions to read as follows:
 If, within five years from the date of this Note, Borrower(s) make(s) any prepayments in any twelve month period beginning with the date of this Note or anniversary dates thereof (loan year) with money lent to Borrower by a lender other than the Note holder, Borrower shall pay the Note holder (a) during each of the first three loan years six (6) percent on the amount by which the sum of prepayments made in any such loan year exceeds twenty (20) percent of the original principal amount of this Note and (b) during the fourth and fifth loan years three (3) percent of the amount by which the sum of prepayments made in any such loan year exceeds twenty percent of the original principal amount of this Note.
Under these provisions, there would be no prepayment penalty if (1) the loan were paid off early with monies from the proceeds of the sale of the home or (2) the loan were paid off early with money borrowed from Charter One.
Plaintiff sold her house in 1996. She prepaid her loan with the proceeds from the sale. The escrow agent contacted Charter One requesting an early payoff figure on the outstanding mortgage. On December 3, 1996, plaintiff received a letter from Charter One itemizing the prepayment amounts, including a prepayment penalty in the amount of $1024.00. Given the fact that plaintiff had sold her home and prepaid the loan from proceeds of the sale, the prepayment penalty charged was contrary to the prepayment provision called for in the Amendment to Note. Nevertheless, plaintiff paid the penalty. Upon learning that Charter One had wrongfully assessed a prepayment penalty, she demanded its return. After approximately four months, plaintiff received a refund of the wrongfully imposed prepayment penalty from Charter One. Charter One, however, refused to pay her interest on the improperly-charged penalty.
Plaintiff filed her class action complaint on August 25, 1998, to which defendant answered by general denial. On February 18, 1999, plaintiff filed her motion for class certification. Following briefing, the trial court heard oral arguments on the issue of class certification on May 28, 1999. The trial court denied plaintiff's motion for class certification by its opinion and order dated July 22, 1999. This timely appeal ensued. This Court has jurisdiction of the appeal pursuant to amended R.C. 2505.02 which expressly permits an appeal of the grant or denial of class certification.
Plaintiff's sole assignment of error states as follows:
 I. THE TRIAL COURT COMMITTED ERROR IN DENYING APPELLANT'S MOTION FOR CLASS CERTIFICATION.
Plaintiff moved to certify a class action pursuant to Civ.R. 23(B). The trial court found that four of the seven requirements for class certification had been satisfied, but that plaintiff had failed on three. Plaintiff contends that the trial court took the certification issues related to plaintiff's fraud theory and turned them into obstacles to the certification of a class on plaintiff's contract theories. Plaintiff also argues that on the contract theories, the record below supports the conclusion that the trial court erred in not finding that all seven requirements were met.
In reviewing this matter, we are mindful that [a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion. Marks v. C.P. Chem. Co., Inc. (1987), 31 Ohio St.3d 200 at syllabus. Nevertheless, the trial court's discretion is not unlimited and must be bounded by and exercised within the framework of Civ.R. 23. Thus, the trial court is required to carefully apply the class action requirements and conduct a vigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied. Hamilton v. Ohio Sav. Bank (1998), 82 Ohio St.3d 67, 70. The trial court herein appropriately took note, as we do, that the Supreme Court has recently held unanimously in Hamilton that there are seven requirements that must be met before a class can be certified:
 The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all the members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.
Id. at 71.
In its Opinion and Order of July 22, 1999 (hereinafter Order), the trial court found that the requirement that the class be unambiguous and identifiable had not been satisfied. (Order at 3). The Supreme Court, in Hamilton, supra, outlined this requirement as follows:
 [T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. 7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure (2Ed. 1986) 120-121, Section 1760. Thus, the class definition must be precise enough to permit identification with a reasonable effort. Warner, supra, 36 Ohio St.3d at 96, 521 N.E.2d at 1096.
Id. at 72.
Therefore, the focus of a trial court in determining whether a class is readily identifiable is whether the means is specified at the time of certification to determine whether a particular individual is a member. Hamilton, supra, at 73; Planned Parenthood Ass'n. of Cincinnati v. Project Jericho (1990), 52 Ohio St.3d at 63. The class proposed by plaintiff was defined to include any Ohio resident who (1) was a Charter One residential mortgage borrower; (2) executed a mortgage contract which included the Amendment to Note requiring a prepayment penalty upon mortgage indebtedness with funds lent to such borrower by a lender other than Charter One; (3) prepaid Charter One with funds not lent to such borrower by a lender other than Charter One; and (4) paid a prepayment penalty to Charter One. (Aplt's Brf. at 3).
Plaintiff submits it is a simple matter to determine whether or not any particular individual is a member of this class. At his deposition, the Assistant Loan Manager for Charter One testified that if given the name of any individual, he could identify by computer whether or not that person had a mortgage loan and was subject to a prepayment penalty. A review of that person's loan file would then reveal whether this person's mortgage loan included the Amendment to Note.
Plaintiff argues that the effort required to identify the class members is no more difficult than those found appropriate and necessary in Hamilton, supra. There, the Ohio Supreme Court found the class unambiguous and identifiable and a finding to the contrary would constitute an abuse of discretion. Hamilton, supra at 74. Like the present case, the Hamilton case involved a mortgage contract; more specifically, a mortgage agreement that contained a specific clause that states, in possibly one or more forms, that the defendant [Ohio Savings Bank] will calculate interest as follows * * *. In order to determine whether a particular individual was a member of the Hamilton class, it was necessary to determine whether he or she had entered into a mortgage agreement with that particular clause. The instant process of identification appears no more onerous than that which was found necessary and appropriate in Hamilton.
To support its finding that it is not feasible to determine whether a particular person is within the class, the trial court in the within matter stated:
 This court believes it would have to, out of necessity, review all of the various mortgage notes and amendments to mortgage notes to determine, among other things; (1) when there was a prepayment penalty involved; (2) to determine the condition of each note; (3) why the borrower, or borrower's escrow agent, made said payments in the face of the conditions of the note; and (4) the information contained in each payoff statement.
(Order at 4-5).
Analyzing each of these four steps of inquiry that the trial court deemed necessary does not lead to the conclusion that this is an unidentifiable class. First, a determination would have to be made that a person paid a prepayment penalty. As stated above, however, this is a simple computer inquiry.
Second, plaintiff agrees that to determine whether a person is a class member, it would be necessary to determine the condition of each note to assure the presence of the relevant prepayment provision. This, however, is no different than the inquiry that was required in the Hamilton case. In Hamilton, it was necessary to determine which of the thousands of mortgages contained the relevant interest clause.
Third, we do not agree with the trial court that in order to determine whether a person is a member of the class it would be necessary to determine why the borrower or the borrower's escrow agent paid the penalty. Plaintiff argues that under her contract theory, an inquiry as to why any borrower or class member paid a prepayment penalty when it was not owed is irrelevant. We agree. If the borrower paid out of a misunderstanding, ignorance or forgetfulness, it does not change the terms of the written contract or the fact that they are part of the class. If the penalty was paid when not owed, the precise terms of the contract have not been followed and the money ought be refunded to the overcharged borrower. If a borrower was a party to the Amendment to Note form and paid a prepayment penalty where none was owed, they are a member of the class.
In Hamilton, the Supreme Court rejected the very same argument advanced by defendant herein. In Hamilton, the bank argued that in order to identify a class member, it was necessary to inquire as to each borrower's knowledge and understanding of the mortgage contract. The Court rejected this argument stating that it would only be necessary to invoke such an inquiry if the mortgage contract involved an undefined or ambiguous contractual term. Id. at 73. The Court further noted that Ohio Savings was able to identify and notify two thousand seven hundred borrowers concerning the terms of their mortgage agreements. Given this ability, the Court stated:
 It is difficult to accept that individual knowledge inquiries are required to determine class membership in this case, when Ohio Savings was able to ascertain, with a reasonable effort, two thousand seven hundred prospective class members without inquiring as to their knowledge or understanding of the terms of their agreements.
Id. at 74.
In the present case, the trial court's finding that there is a need to inquire into why each borrower paid the prepayment penalty is no different than the Hamilton argument that there is a need to inquire into each borrower's knowledge and understanding of the contract. Both require an individual inquiry into each borrower's state of mind. This was rejected by the Court in Hamilton because there was no claim that the terms of the mortgage were ambiguous. Similarly, in the present case, there is no such claim. In fact, the trial court found the contract to be clear and unambiguous. (Order at 6). Additionally, the ability of the bank in Hamilton to notify its borrowers is no different than Charter One's ability to notify its borrowers.
Civ.R. 23(B)(3) also requires that issues of fact and law common to all class members predominate over issues pertaining to individual members of the class. With respect to this requirement, the Ohio Supreme Court in Cope v. Metropolitan Life Ins. Co. (1998), 82 Ohio St.3d 426, stated:
 It is now well established that a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. Lockwood Motors, Inc. v. Gen. Motors Corp. (D.Minn. 1995), 162 F.R.D. 569, 580.
Id. at 429-430.
It is not necessary that all issues be common. In the within matter, the trial court found that plaintiff failed to establish predominance; however, the analysis in the lower court Opinion addresses plaintiff's fraud claim. (See Order 6-7). Plaintiff, however, has advanced theories of both contract and fraud. A fraud claim may indeed require individual inquiries into reliance, specific representations and communication between the parties. These individualized inquiries would present class certification difficulties on the legal theory of fraud. Such difficulties do not exist in a contract action based on an unambiguous written contract. Charter One has never claimed that the Amendment to Note is ambiguous. In fact, the trial court found the Amendment to Note to be clear and unambiguous. (Order at 6).
In a contract action where the agreement is in writing and the terms unambiguous, the agreement is controlled by the writing. No further inquiry beyond the writing is necessary or allowed.
 Generally, courts presume that the intent of the parties to create a contract resides in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus; Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Only when the language of a contract is clear and unambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give to the parties' intentions. Kelly, supra, at 132, 31 OBR at 291, 509 N.E.2d at 413. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. * * * If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity. See, Stony's Trucking Co. v. Pub. Util. Comm. (1972), 32 Ohio St.2d 139, 142, 61 O.O.2d 388, 389, 290 N.E.2d 565, 567.
Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638.
In the present case, every class member would be a party to the written, unambiguous Amendment to Note. Their rights with respect to prepayment penalties are defined by that writing and nothing else. We do not understand plaintiff to contend otherwise. (See Aplt's Brf. at 4; Reply Brf. at 2). No other inquiry, individual or otherwise, is needed or appropriate.
The trial court outlines several individual issues or inquiries that it finds would be necessary; however, all relate to issues of fraud, not contract. In its Opinion and Order at page 7, the trial court states:
 Plaintiff has made a class-wide allegation of fraud, [sic] this Court finds that the allegation is not suitable for class adjudication because material variations in the representations or in the kinds and degrees of reliance by the persons to whom the statements were made exist which require individual, rather than class-wide, adjudication of the dispute at hand.
As plaintiff concedes, such individual inquiries are arguably necessary in a claim for fraud, but such inquiry, as outlined above, is neither required nor allowed in an action based on an unambiguous written contract.
The lower court Opinion states an adjudication of this claim would require inquiry into the representations made by various Charter One employees to each individual borrower. (Order at 7). Such inquiry might be necessary in a fraud action but not for a contract claim where the written terms are unambiguous. Representations made by Charter One employees cannot change the unambiguous terms of the mortgage contract any more than the individual understandings of the borrowers can. The subjective understanding of a party to an objectively unambiguous written contract will not change the terms of the contract. Alexander, supra, at 150. The fact that a party did not understand or had an understanding different than that contained in the writing cannot change the writing. Thus, plaintiff argues, and we agree, that the right of every class member would be controlled by the same Amendment to Note.
Finally, the trial court stated, An inquiry would have to be made into what the escrow agent and the borrower were told by Charter One and, in turn, what the agent told the mortgager about the obligations of satisfying the mortgage. (Order at 7). While such individual inquiries might be necessary in a fraud claim, we find that no such inquiry is required in this case. The rights and obligations of every class member would be controlled by the unambiguous terms of the Amendment to Note. There is no need to inquire into verbal representations made to individual class members when such representations could in no way change their rights under the written contract.
Our analysis of plaintiff's contract claim leads to the conclusion that common issues predominate. By definition, all class members are subject to the same Amendment to Note. All questions of law and fact arise out of this single written contract clause. The court's finding that the Amendment to Note is clear and unambiguous is a finding that applies to all class members. The questions of law predicated thereon are common to all class members. Each legal issue is based on the same Amendment to Note.
When reviewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such. Kleiner v. The First National Bank of Atlanta (N.D.GA. 1983),97 F.R.D. 683, 691. See, also, Baughman v. State Farm Mutual Auto. Ins. Co. (2000), 88 Ohio St.3d 480, 490, citing to Hamilton, supra, at 80 (class action treatment is appropriate where the claims arise from standardized forms or routinized procedures * * *); Cope v. Metro Life Ins. Co. (1998), 82 Ohio St.3d 426, 430 (courts also generally find that a wide variety of claims may be established by common proof in cases involving form documents or the use of standardized procedures and practices); Shaver v. Standard Oil Co. (1990), 68 Ohio App.3d 783, 795 (by providing standardized lease agreements which were uniformly imposed on the dealers by Standard, appellant met the threshold requirement of commonality); Begala v. PNC Bank (Dec. 30, 1999), Hamilton App. No. C-99003, unreported (uniform class of borrowers presented with identical adhesion contract was properly certified class).
Thus, we find that common questions of law and fact predominate over other issues involved in the claims.
Civ.R. 23(B)(3) requires a finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. We find that the trial court erroneously concluded that this superiority requirement had not been satisfied.
Certain factors should be considered in determining whether a class action is the superior method. These factors are outlined in Civ.R. 23(B)(3). First, the court should consider the interest of members of the class in individually controlling the prosecution or defense of separate actions. Civ.R. 23(B)(3)(a). In the present case, individual interest in separate claims is arguably non-existent because limited damages destroy the economic feasibility of individual cases. The Supreme Court in Hamilton recognized this argument in finding that a class action was the superior method:
 The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor. Amchem, supra., 521 U.S. at ___, 117 S.Ct. at 2264, 138 L.Ed.2d at 709; Mace v. Van Ru Credit Corp. (C.A.7, 1997), 109 F.3d 338, 344.
Hamilton, 82 Ohio St.3d at 80. See, also, Phillips Petroleum Co. V. Shutts (1985), 472 U.S. 797, 809 (* * * most of the plaintiffs would have no realistic day in court if the class action were not available). As in Hamilton, the instant case presents a classic case for treatment under Civ.R. 23. No other procedural device would serve the purpose as well.
To further assess individual interest in adjudicating separate actions, Civ.R. 23(B)(3)(b) directs consideration of the number of cases filed by individual class members. To date, no class member has filed an individual action. The Hamilton court noted the significance of this:
 The presence of parallel, individual actions tends to weigh against class certification, while the lack of parallel lawsuits tends to weigh in favor of certification. Ingram, supra, 90 F.R.D. at 133; Wright, Arthur T. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986), at 568-571, § 1780.
Hamilton, 82 Ohio St.3d at 81 (emphasis in original). The lack of any individual lawsuits relating to this case is compelling evidence that there is no current or anticipated interest on the part of individuals in pursuing separate actions to obtain refunds of the prepayment penalty.
In addressing the superior method requirement, the court may consider the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Civ.R. 23(B)(3)(c). Given the common issues of fact and law, everything points toward the efficiency of a single adjudication. Given that the class definition is confined to the State of Ohio, the state court system is appropriate.
Finally, Civ.R. 23(B)(3)(d) directs the court to consider the difficulties likely to be encountered in the management of a class action. The adjudication of this case primarily involves documentation that Charter One has, and must have, concerning mortgage loan payoffs. Charter One's computer system can identify all borrowers who have not only prepaid their loans but who also paid a penalty. An examination of each person's mortgage will determine whether the relevant Amendment to Note was executed as an enforceable provision to the mortgage. Damage calculations require nothing more than applying an interest rate to the existing prepayment penalties that it is alleged were wrongfully paid.
The only reason the trial court provided to explain its finding that the superiority requirement was not satisfied was that the amount of damages could differ from plaintiff to plaintiff. (Order at 7). However, with respect to differences in damages, the Hamilton court held:
 We have specifically held, in accordance with the overwhelming weight of authority, that a trial court should not dispose of a class certification solely on the basis of disparate damages. Ojalvo, supra, 12 Ohio St.3d at 232, 12 Ohio B.Rep. At 314, 466 N.E.2d at 876-877.
Hamilton, 82 Ohio St.3d at 81.
The Hamilton court proceeded to outline circumstances where disparate damages might lead to the denial of class certification. The Court stated:
 This is not to say that certification may never be denied on the basis of individual damage issues. Some courts have denied certification where the calculation of damages is particularly complex or burdensome. However, such is not the case where, as here, damages may be calculated by a mathematical formula. 5 Moores Federal Practice, supra at 23-209 to 23-210, § 23.46(2)(b).
 Thus, as the court in Partain, supra, 59 F.R.D. at 59, explained:
 In this case, * * * no separate trials will be required on the issue of damages. Damages can be mathematically calculated on the basis of the information presently contained in the bank's records. * * *
Hamilton, 82 Ohio St.3d at 81-82.
In the present case, we do not perceive that complex or burdensome damage calculations would be required if class status is granted. The bank's own records outline the exact amount of prepayment penalties paid by each class member. The calculation of interest by using simple multiplication is the full extent of the damage calculation necessary. There is nothing about the individual damages in this case that would provide the basis for the denial of class certification. Thus, we find that the class action method is superior to other methods for the fair and efficient adjudication of this case.
Accordingly, we find in applying Hamilton principles to the case at hand, that the trial court abused its discretion in declining to certify the class on plaintiff's contract claims. The trial court decision is affirmed on plaintiff's fraud claim.
Judgment affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion.
It is ordered that appellee and appellant shall each pay their respective costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI, P.J., and ANNE L. KILBANE, J. CONCUR.