**James J. KEATING, d.b.a. Jim Keating I.C.O. on behalf of himself and others similarly situated, Appellant,**

v.

**PHILIP MORRIS, INC., American Brands, Inc. d.b.a. The American Tobacco Company, Brown & Williamson Tobacco Corp., Liggett & Myers, Inc., Lorillard, Inc., R.J. Reynolds Industries, Inc., d.b.a. R.J. Reynolds Tobacco Co., Respondents.**

No. C6–87–1385.

Court of Appeals of Minnesota.

Dec. 22, 1987.

neth A. Letzler, Arnold & Porter, Washington, D.C., Harold D. Field, Byron E. Starns, Gregory C. Brown, Leonard, Street and Deinard, Minneapolis, Paul G. Pennoyer, Jr., Daniel J. O'Neill, Jerome C. Katz, Chadbourne & Parke, New York City, John D. French, John F. Beukema, Faegre & Benson, Elliot S. Kaplan, Deborah J. Palmer, Robins, Zelle, Larson & Kaplan, Minneapolis, William H. Hogeland, Bruce Topman, Webster & Sheffield, New York City, Joe A. Walters, Thomas R. Sheran, O'Connor & Hannan, Minneapolis, Joseph W. Gelb, David D. Leitch, Weil, Gotshal & Manges, New York City, Eugene M. Warlich, Alan I. Silver, Doherty, Rumble & Butler, for respondents.

Heard, considered and decided by NORTON, P.J., and IVERSON and LOMMEN, JJ.*

## OPINION

NORTON, Judge.

Appellant James Keating filed a class action complaint on July 30, 1979, alleging a conspiracy among respondent cigarette manufacturers to fix cigarette prices, in violation of Minn.Stat. §§ 325D.49–325D.66 (Minnesota Antitrust Law of 1971).

In 1985, appellant received a form notice that the case would be dismissed for failure to prosecute if it was not ready for trial in one year. On November 13, 1985, appellant moved for class certification, which was denied on August 21, 1986.

On February 12, 1987, respondents' motion for summary judgment was heard. On April 6, 1987, this motion was granted on the ground that appellant, as an indirect purchaser, had no cause of action under the Minnesota Antitrust Act during the period covered by the complaint. This period was determined to be from 1974 until the filing of the complaint in 1979.

Keating appeals from the trial court's grant of summary judgment; he also challenges the denial of class certification. Re-

John A. Cochrane, John E. Thomas, Brian N. Toder, Cochrane & Bresnahan, P.A., St. Paul, for appellant.

Robert A. Schwartzbauer, Dorsey & Whitney, Minneapolis, Melvin Spaeth, Ken-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

spondents have cross-appealed from the trial court's denial of their motion to dismiss for failure to prosecute. We affirm in part, reverse in part and remand for trial of appellant's post–1984 claims.

### FACTS

Appellant owns several gas stations at which cigarettes are sold at the retail level. Respondents are the six largest cigarette manufacturers in the country.

In 1979, appellant filed a complaint alleging that respondents had engaged in a conspiracy in restraint of trade in cigarettes. Appellant further alleged that he and other cigarette retailers had been injured by this conspiracy.

Respondents sell cigarettes directly to certain chain store retailers who possess Minnesota "tax stamping" licenses. The vast majority of retailers, including appellant, do not buy directly from respondents. Instead, respondents sell to distributors who sell either directly to retailers or to subjobbers who, in turn, sell to retailers.

The prices charged by distributors or subjobbers to retailers vary widely. Prices varied depending on whether a discount was given, and if so, how much; quantity purchased; prices offered by other wholesalers; whether delivery was required; and whether the retailer paid cash or required credit. Discounts came in a variety of forms: refunds for merchandise; free merchandise, such as candy or gum; credit for advertising allowances or damaged merchandise; free special delivery service; and free warehouse storage of ordered goods. The agency charged with enforcing the Minnesota Unfair Cigarette Sales Act has concluded that nonuniform discounts were being offered by most wholesalers, in violation of the Act. *See* Minn.Stat. §§ 325D.30–325D.42.

Respondents deposed appellant on three occasions, covering a total of ten days, in March and April of 1980. By court order, all discovery was limited to issues of class certification. No discovery has been permitted on the merits. The order limiting discovery was granted pursuant to respondents' motion.

In November of 1985, appellant moved for certification of a class consisting of "[a]ll persons, firms, corporations or other entities in Minnesota or any sub-part thereof, who purchased cigarettes manufactured by the Defendants at prices affected by the activities complained of, for resale to consumers." This motion was the first action on the case since the complaint was amended on August 23, 1979. Respondents brought a motion to dismiss for failure to prosecute.

The motions were heard on March 7, 1986, and both appellant's motion and respondents' motion were denied on August 21, 1986. The trial court found that issues of law or fact common to the class members did not predominate over questions affecting only individuals, and that because of the lack of any formula for calculating damages, the case would be unmanageable as a class action. As to respondents' motion, the court concluded that respondents had failed to establish any prejudice as a result of the delay. By order of November 25, 1986, the trial court refused to reconsider its prior action.

Following the November 25 order, respondents moved for summary judgment on two grounds: first, the Minnesota antitrust law does not accord an indirect purchaser a cause of action, and second, appellant cannot show any actual damages as required by the Minnesota antitrust statute. This motion was granted on April 4, 1987, based on only the first ground. This appeal followed.

### ISSUES

1. Did the trial court err in determining that appellant's complaint covered only the years 1974–1979?

2. Did the trial court err in determining that appellant's claim under Minnesota antitrust law was barred by the *Illinois Brick* doctrine?

3. Did the trial court abuse its discretion in denying appellant's motion for class certification?

4. Did the trial court abuse its discretion in denying respondents' motion to dismiss for failure to prosecute?

## ANALYSIS

I. Time Covered by Appellant's Complaint.

■ In finding that the complaint covered the years 1974–1979, the trial court relied on paragraph 15 of the complaint. The trial court, in a footnote, found the following language determinative:

> Beginning at least as early as 1974, and probably prior thereto, the exact beginning date being unknown to the plaintiff at this time, and continuing thereafter up to and including the date of filing of this Complaint * * *.

Because the complaint was filed July 30, 1979, the trial court, based on the portion of the complaint quoted above, determined: "the Complaint deals with a time frame ending on July 30, 1979." This ignores the remainder of paragraph 15, which goes on to say:

> the defendants and co-conspirators have engaged in a contract, combination or conspiracy in restraint of the above-described trade and commerce in cigarettes in violation of the Minnesota Antitrust Law of 1971, and other laws. *Said violations may continue or recur unless the relief hereinafter prayed for is granted.*

(Emphasis added.) The relief prayed for included an injunction prohibiting the respondents from "continuing, maintaining or renewing the contract, combination or conspiracy hereinbefore alleged." We conclude this complaint alleged an on-going conspiracy that continued after the filing of the complaint.

II. The *Illinois Brick* Doctrine.

A. The Pass–On theory.

"Pass-on" refers to the theory that someone who buys and then resells an allegedly price-fixed product suffers no loss if the product can be sold at a price sufficient to pass on the cost increase to buyers further down the chain of distribution. The United States Supreme Court has rejected the theory for both plaintiffs and defendants. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).

In *Illinois Brick*, the Court was faced with a situation in which indirect purchasers were attempting to use the pass-on theory offensively. The indirect purchasers in *Illinois Brick* were the State of Illinois and 700 local governmental entities. These parties sued the manufacturers and distributors of concrete block in the Greater Chicago area, alleging a combination and conspiracy to fix the prices of concrete block.

The concrete block manufacturers in *Illinois Brick* sold directly to masonry contractors. The masonry contractors in turn submitted bids to general contractors. The general contractors then submitted bids to customers, such as the plaintiffs, for construction projects. The suit alleged the amounts paid for these construction projects were over $3 million higher than they would have been in the absence of the price-fixing conspiracy. "The only way in which the antitrust violation alleged could have injured respondents is if all or part of the overcharge was passed on by the masonry and general contractors to respondents, rather than being absorbed at the first two levels of distribution." *Illinois Brick*, 431 U.S. at 727, 97 S.Ct. at 2065. The plaintiffs in *Illinois Brick* were thus as far removed in the chain of distribution from the manufacturers as appellant is from respondents.

In concluding that indirect purchasers had no cause of action under federal antitrust law, the Court applied a two-step analysis. First, it determined that any rule relating to the pass-on issue should apply equally to plaintiffs and defendants. *Id.* at 729, 97 S.Ct. at 2066. The Court reasoned that allowing offensive but not defensive pass-on "would create a serious risk of multiple liability for defendants" by presuming that the direct purchaser is entitled to a full recovery while not allowing the

defendant to use that presumption against the indirect purchaser. *Id.* at 730–31, 97 S.Ct. at 2066–67. In addition, the Court was concerned about complex problems of proof, *id.* at 731–32, 97 S.Ct. at 2067–68 and reiterated its determination in *Hanover Shoe* that the antitrust laws will be more effectively enforced by limiting the right to recovery to direct purchasers. *Id.* at 734–35, 97 S.Ct. at 2069.

Having concluded that the same rule regarding pass-on would apply to plaintiffs and defendants, the Court was left with the choice of overruling (or severely limiting) *Hanover Shoe,* or of precluding the use of offensive pass-on. The latter route was chosen. *Id.* at 736, 97 S.Ct. at 2069. The reasons were the same as those behind prohibiting defensive pass-on: the addition of new levels of complexity in antitrust suits and a reduction of their effectiveness. *Id.* at 737, 741–42, 97 S.Ct. at 2070, 2072–73.

B. Application of *Illinois Brick* to the Minnesota Antitrust Law of 1971, Minn.Stat. §§ 325D.49–.66.

1. Pre–1984.

■ The Minnesota Supreme Court has consistently held that the Minnesota Antitrust Law should be construed consistently with the federal courts' construction of the federal antitrust laws. *See State v. Duluth Board of Trade,* 107 Minn. 506, 517, 121 N.W. 395, 399 (1909) ("the general purpose of all statutes of this kind is the same, and we may therefore properly look to the decisions made under federal and state statutes of a similar character for the principle by which to construe our own statute"). *See also Christgau v. Woodlawn Cemetery Association,* 208 Minn. 263, 276, 293 N.W. 619, 625 (1940) ("it would be anomalous to have the state and federal courts applying different rules to the same facts under identical provisions of law"); *Campbell v. Motion Picture Machine Operators' Union, Local 219,* 151 Minn. 220, 228–29, 186 N.W. 781, 783 (1922) (reiterating the *Duluth Board of Trade* rationale). The trial court was therefore correct in concluding that, following federal law, appellant's cause of action was barred by *Illinois Brick.*

2. Post–1984.

1984 Minn. Laws ch. 458, § 1 amended the Minnesota Antitrust Act to allow a cause of action to indirect purchasers. The legislative history of this amendment indicates that it was a direct response to the *Illinois Brick* decision.

■ Appellant argues that the 1984 amendment should be applied retroactively. This argument is based on pre-enactment statements to the effect that the 1984 amendment was merely a clarification of existing law and not a change in the law. The statute, as amended, does not specify that it is to be applied retroactively. Minn. Stat. § 645.21 (1986) provides:

No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

*Id.; see also Krause v. Merickel,* 344 N.W. 2d 398, 402 (Minn.1984); *Chapman v. Davis,* 233 Minn. 62, 65, 45 N.W.2d 822, 824 (1951). The legislature did not clearly and manifestly intend retroactive application of the 1984 amendment; the trial court was therefore correct in dismissing all claims for alleged pre–1984 violations. The trial court erred, however, in dismissing appellant's post–1984 claims. Because appellant's complaint alleged an on-going conspiracy, we conclude that appellant has a valid cause of action for claims arising after the 1984 amendments.

III. Denial of Class Certification.

Whether a suit may be properly brought as a class action is determined by Minn.R. Civ.P. 23.01 and 23.02.

In the present case, the trial court found that certification of the suit as a class action was inappropriate for two reasons. First, the court found that common issues of law or fact did not predominate over questions affecting only individuals, and second, the court found that the suit would be unmanageable as a class action.

A. Common Questions v. Individual Questions.

■ Private antitrust liability requires a showing of (1) a violation of the antitrust laws, (2) the fact of damage, and (3) some indication of the amount of damage. *Nichols v. Mobile Board of Realtors, Inc.*, 675 F.2d 671, 675 (5th Cir.1982); *Jot–Em–Down Store (JEDS) Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir.1981).

The trial court found that the only common question was whether there was a violation of the antitrust laws. If this were established, it would be necessary for each putative class member to establish the fact and amount of damage. In a market such as wholesale cigarette sales, each retailer would have to establish the price paid on each purchase, a task further complicated by wholesalers' widespread use of nonuniform discounts. In transactions in which the discount was a service, such as free storage or delivery, the value of the noncash discount would have to be established. As the trial court noted, "[a]ny determination of fact or amount of individual damage will require thousands of factual examinations done on a retailer by retailer basis, and a transaction by transaction basis. The class action would quickly degenerate into thousands and thousands of individual trials." Other courts have also refused to certify a class when proof of damages would result in thousands of mini-trials. *See, e.g., Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir.1978); *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir.1977) (dicta), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *American Custom Homes, Inc. v. Detroit Lumberman's Association*, 91 F.R.D. 548, 551 (E.D.Mich.1981).

B. Unmanageability.

The unmanageability of this suit is also based on the necessity of thousands of mini-trials to determine damages. The differences involved in each transaction preclude a uniform method for calculating damages. As the court stated in *Windham:*

Thus in cases where the fact of injury and damage breaks down in what may be characterized as "virtually a mechanical task," "capable of mathematical or formula calculation," the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability. On the other hand, where the issue of damages and impact does not lend itself to such a mechanical calculation, but "requires separate mini-trial,[s]" of an overwhelming large number of individual claims, courts have found that the "staggering problems of logistics" thus created "make the damage aspect of [the] case predominate," and render the case unmanageable as a class action.

*Windham*, 565 F.2d at 68 (footnotes omitted).

The trial court stated:

In the instant litigation there are no mathematical calculations or formulae that can be used to determine each putative class member's damages. To determine individual damages the Court would have to conduct thousands of trials and examine hundreds of thousands of transactions between thousands of retailers, wholesalers, distributors and manufacturers. This would certainly be an unmanageable, if not impossible, task.

■ Trial courts have considerable discretionary power in determining whether a class action may be maintained. *Forcier v. State Farm Mutual Automobile Insurance Co.*, 310 N.W.2d 124, 130 (Minn.1981); *Streich v. American Family Mutual Insurance Co.*, 399 N.W.2d 210, 213 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). One of the factors a trial court must consider is manageability. *Forcier*, 310 N.W.2d at 130. Where proof of damage must be established on an individual basis for thousands of class members, the suit is unmanageable and class action treatment is inappropriate. *See Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 432–33 (W.D.Mo.1973).

■ Appellant suggests that a class action would be manageable if it were bifurcated; i.e., if a test case were held to determine whether there was a conspiracy, followed by individual determinations of damages. This approach would still leave the problem of determining the fact and amount of damage for each retailer. The lawsuit would remain unmanageable. We conclude the trial court did not abuse its discretion in denying class certification.

## IV. Denial of Motion to Dismiss.

In light of our disposition of this case, we do not reach respondents' claim of error in denying their motion to dismiss.

## DECISION

The trial court erred in limiting the time period covered by the complaint to the years 1974–1979. The trial court correctly found appellant's claims barred by the *Illinois Brick* doctrine prior to the 1984 amendments to the Minnesota Antitrust Act. The trial court did not abuse its discretion in denying class certification. Appellant is entitled to a trial on any claims arising after the 1984 amendment to the Minnesota Antitrust Act of 1971.

Affirmed in part, reversed in part and remanded.