Glen **LEWY** 1990 **TRUST,** By Its Trustees Cheryl **LEWY** and Janice Winter, on behalf of the Class described in the Amended Complaint, Appellants,

v.

**INVESTMENT ADVISORS, INC.,** et al., Respondents.

No. C6–02–416.

Court of Appeals of Minnesota.

Sept. 3, 2002.

---

Richard A. Lockridge, Gregg M. Fishbein, Gregory J. Myers, Lockridge Grindal Nauen P.L.L.P., Minneapolis, for appellants.

Charles F. Webber, Karen E. Wilson, Deborah A. Ellingboe, Faegre & Benson LLP, Minneapolis, for respondents.

Considered and decided by LANSING, Presiding Judge, KALITOWSKI, Judge, and SCHUMACHER, Judge.

## OPINION

LANSING, Judge.

The trustees of a family trust moved for class certification in their breach-of-fiduciary-duty action against a mutual fund management company and its principals. The district court denied certification. The trustees appeal, arguing that the undisputed facts establish that they have met the certification requirements in Minn. R. Civ. P. 23 and that the district court abused its discretion in denying their motion to amend the complaint to include unchallenged factual clarifications. We affirm the denial of the amendment as within the district court's discretion, but, because the facts establish the requirements necessary for certification under rule 23, we reverse and remand for certification of the class.

## FACTS

Cheryl Lewy and Janice Winter, trustees for the Glen Lewy 1990 Trust, filed a class action complaint against Investment Advisors, Inc., and six of IAI's principals (collectively IAI). The trustees alleged that IAI breached its fiduciary duties by failing to disclose planned distribution of unusually large short-term capital gains to shareholders who had shares in IAI's Emerging Growth Fund (fund). The trustees also alleged that IAI, by withholding disclosure of the unusually large capital-gains distribution, communicated false and misleading information to shareholders to obtain approval of the lucrative sale of its management rights to another mutual fund company.

The trustees first invested assets in IAI's Emerging Growth Fund in 1993. IAI's prospectus stated that the fund objective was long-term capital appreciation. The trust's total investment in the fund equaled $210,000. From 1993 to 2000, the fund made capital-gains distributions to shareholders twice a year. From 1993 to 1995 and from 1997 to 1998, the fund distributed only long-term capital gains. During 1996, the fund distributed nominal short-term capital gains once and long-term capital gains once. During 1999, the fund distributed nominal short-term capital gains in June and again in December. But during 2000, the fund distributed both long-term and the unusually large short-term capital gains in June and again in September. By September 15, 2000, the trust's investment was worth $699,715.18.

The fund's general pattern was to recognize long-term capital gains and then distribute them to shareholders, who would incur tax liability on the capital gains. In the fiscal year ending March 31, 2000, however, the fund recognized unusually large short-term gains and decided to distribute half the capital gains in June 2000 but defer distribution of the other half until September 2000. The decision to defer distribution of half the gains was not

explicitly communicated to shareholders when the June distribution was made.

In June 2000, IAI negotiated an agreement with Federated, another mutual fund manager, to sell IAI's mutual fund business under a proposed plan of reorganization and termination, subject to approval by shareholders. In July 2000, IAI sent its shareholders a prospectus describing the proposal. The prospectus correctly stated that the sale would not result in tax liability for the shareholders but failed to address the capital-gains distribution coming in September. The fund's shareholders approved the transaction, and IAI completed the sale on September 15, 2000, for an undisclosed price measured by the value of the IAI funds together with contingent payments. Following the sale the fund was transferred into the Federated Aggressive Growth Fund. Immediately prior to the closing of the sale, the fund distributed the short-term capital gains.

In December 2000, the trustees brought this action alleging that IAI breached its fiduciary duties by failing to disclose the unusually large short-term capital gains in advance of distribution and by communicating false and misleading information in the prospectus that described the proposed transaction with Federated. The trustees claim that, had they known of the upcoming distribution, they would have redeemed their shares and been able to obtain more favorable long-term capital-gains treatment.

After filing the action, the trustees requested supplemental discovery to obtain documents sufficient to identify the fund's shareholders as members of a proposed class. The district court denied that request and instead ordered IAI to produce documents that disclosed only the number and type of shareholders in the fund.

Following discovery, the trustees moved for class certification and to amend their complaint to include factual allegations that are largely undisputed. IAI moved for summary judgment on the merits. The district court determined that the trustees had established the necessary prima facie case to withstand summary judgment on their individual claim, but denied the trustees' class-certification motion, and also denied the trustees' motion to amend their complaint. The trustees and IAI negotiated a stipulation under which IAI paid the full amount of the trustees' claim, but the trustees retained the right to appeal the denial of class certification.

In this appeal from the final judgment the trustees challenge three separate rulings: the denial of class certification, the denial of their motion to amend their complaint, and the limitation of discovery to preclude them from obtaining the names and account information of the fund's shareholders.

### ISSUES

I.  Did the trustees establish the requirements for class certification under Minn. R. Civ. P. 23?

II.  Did the district court abuse its discretion by denying the trustees' motion to add unchallenged allegations to their complaint?

### ANALYSIS

### I

A Minnesota court may not certify a class unless the class satisfies the requirements of Minnesota Rule of Civil Procedure 23. Class certification under rule 23 is a two-step process. First, the class must satisfy all four mandatory requirements of rule 23.01: numerosity, commonality, typicality, and adequacy of representation. Minn. R. Civ. P. 23.01. Second, a class must also satisfy the requirements of

one of the subdivisions of Rule 23.02. Minn. R. Civ. P. 23.02.

The trustees contend that they have satisfied all four mandatory requirements of rule 23.01 and have also satisfied the requirements of rule 23.02(c) by demonstrating that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* § 23.02(c).

■ The district court applied Minn. R. Civ. P. 23 and concluded that, although the class met the commonality requirement, it did not meet the numerosity, typicality, or representational-adequacy requirements. The court also found that common legal issues would not predominate and that the class action was not a superior method of adjudication. Minn. R. Civ. P. 23 is modeled after Fed.R.Civ.P. 23. *Compare* Fed. R.Civ.P. 23 *with* Minn. R. Civ. P. 23. Because the procedural rules are essentially parallel, federal precedent is instructive in interpreting our rule. *See Johnson v. Soo Line R.R.*, 463 N.W.2d 894, 899 n. 7 (Minn. 1990) ("federal cases interpreting the federal rule are helpful and instructive but not necessarily controlling").

### Numerosity

■ Rule 23.01(a) requires that the class be "so numerous that joinder of all members is impracticable." *See Jenson v. Cont'l Fin. Corp.*, 404 F.Supp. 806, 809 (D.Minn.1975) (stating that numerosity is satisfied if joinder of plaintiffs, while theoretically feasible, is impracticable). Courts have not developed "arbitrary or rigid rules" to define the required size of a class, and impracticability is a fact-specific determination. *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 337 (D.Minn. 1999) (citing *Boyd v. Ozark Air Lines,*

*Inc.*, 568 F.2d 50, 54 (8th Cir.1977)). In determining impracticability, courts generally consider a number of factors, including the size of the putative class, the size of the class member's individual claim, the inconvenience of trying individual suits, and the nature of the action itself. *See Parkhill*, 188 F.R.D. at 337 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir.1982)).

■ Although the trustees need not show the exact number in the putative class, mere speculation as to the size of the class is insufficient to satisfy the numerosity requirement. *Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 336 (D.Minn.1987). When the class is very large—numbering in the hundreds—joinder is almost always impracticable, but the difficulty of joining as few as 40 class members may also raise a presumption that joinder is impracticable. *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D.Minn.1995) (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.05 (3d ed.1992)).

■ The trustees established that as of June 30, 2000, the fund had 2,300 shareholders, 1,000 of which were tax-paying rather than tax-deferred entities. The trustees contend that they are unable to identify specifically the potential members of the class because the district court limited the trustees' discovery to the number and type of shareholders in the fund. In light of the discovery limitation, it is not persuasive to conclude that class certification should be denied because the trustees failed to point to particular shareholders who were adversely affected by the distribution. Furthermore, the fact that a precise number of class members cannot be specified is not decisive, as the trustees need only show " 'some evidence or reasonable estimate of the number of purported

class members.'" *Linquist v. Bowen,* 633 F.Supp. 846, 858 (W.D.Mo.1986) (quoting *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981). *aff'd,* 813 F.2d 884 (8th Cir.1987)).

The trustees have provided a reasonable, good-faith estimate of a potential class of 1,000 shareholders. Without further discovery, the exact membership cannot be ascertained. In these circumstances, a good-faith estimate is sufficient to satisfy the numerosity requirement. *Long v. Thornton Township High Sch. Dist. 205,* 82 F.R.D. 186, 189 (N.D.Ill. 1979). The trustees have adequately demonstrated numerosity.

### *Commonality*

■ Rule 23.01(b) requires that certification be based on "questions of law or fact common to the class." The threshold for commonality requires that the resolution of the common questions affect all or a substantial number of class members. *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). For commonality to exist, behavior causing a common effect must be subject to some dispute. *In Re Objections & Defenses To Real Property Taxes for 1980 Assessment,* 335 N.W.2d 717, 719 (Minn.1983). The district court properly concluded that commonality existed, and IAI does not challenge this conclusion.

### *Typicality*

■ Rule 23.01(c) requires that the claims and defenses of the representative parties must be "typical of the claims or defenses of the class." This requirement functions jointly with the representational-adequacy requirement "to insure that the claims of the class members are fully presented and vigorously prosecuted." *Sley v. Jamaica Water & Utils., Inc.,* 77 F.R.D. 391, 394 (E.D.Pa.1977).

■ Typicality requires that the representative parties "have an interest compatible with that of the class sought to be represented." *Ario v. Metro. Airports Comm'n,* 367 N.W.2d 509, 513 (Minn.1985). A potential for rivalry or a conflict that may jeopardize the interests of the class weighs against a finding of typicality. *Id.*

■ The typicality requirement is met when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members. *See Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996) (stating that typicality exists if there are "other members of the class who have the same or similar grievances as the plaintiff"); *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561–62 (8th Cir. 1982); *Lockwood,* 162 F.R.D. at 575. "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 311 (3rd Cir.1998). A "strong similarity of legal theories" satisfies the typicality requirement even if substantial factual differences exist. *Lockwood,* 162 F.R.D. at 575.

■ The district court, relying on its numerosity finding, ruled that by failing to show that other class members exist, the trustees necessarily failed to show that their claim is typical of the proposed class. We disagree. First, the trustees cannot reasonably be expected to show that other class members exist when they have been denied discovery aimed at this specific purpose. But even without the discovery, the record adequately demonstrates the similarity of claims and alignment of interests. The trustees' claims are typical of the potential class because both are based on the identical legal theory—breach of fiduciary

duty—and both arise from the same facts—the distribution of unusually large short-term capital gains in 2000 and the information or lack of information relating to capital gains in the prospectus outlining the transaction with Federated. No evidence suggests that the trustees have a conflict or a misalignment with the interests of the putative class. The trustees' claims are typical of the proposed class claims.

### Adequacy of Representation

▨ Rule 23.01(d) requires that "the representative parties will fairly and adequately protect the interests of the class." Representational adequacy means the representative parties' interests must coincide with the interests of other class members and that the parties and their counsel will competently and vigorously prosecute the lawsuit. *Ario*, 367 N.W.2d at 513. Factors used to determine if representivity is satisfied include: (1) whether the representatives' interests are sufficiently identical to those of absent class members so that the representatives will vigorously prosecute the suit on their behalf; (2) whether the attorneys are qualified, experienced, and capable of conducting the litigation; and (3) whether the representatives have any interests that conflict with the objective of the class they represent. *See Smith v. B & O R.R.*, 473 F.Supp. 572, 581 (D.Md.1979).

▨ IAI does not dispute the ability of the trustees' counsel to represent the interests of the proposed class or the absence of conflict between the trustees, the proposed class representatives, and the proposed class. Therefore, the only issue is whether the trustees' interests are sufficiently similar to guarantee that the trustees will vigorously prosecute this case on behalf of the members of the proposed class.

The district court concluded that "[b]y their actions, the trustees showed that they are unsuitable to protect the class' interests," because they lack knowledge of the case. The court also relied on the fact that the trustees "failed to demonstrate that a single potential class member had a loss and that that loss was for the same reason."

▨ Class representatives in complex cases are not required to have the detailed level of firsthand knowledge of facts or law that IAI or the district court seeks to impose. *See In re Workers' Comp.*, 130 F.R.D. 99, 107–108 (D.Minn.1990); *Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 528 (N.D.Ill.1988) ("[i]n a complex securities case involving novel economic and legal theories * * * it is irrational to expect plaintiffs to exhibit a detailed knowledge of the issues"). What is required with respect to adequacy of representation is that a named plaintiff have "a basic understanding of the allegations made in the case, and what law is alleged to have been violated, and be willing to contest an action by his attorneys with which he did not agree." *In re Resource Am. Sec. Litig.*, 202 F.R.D. 177, 187–88 (E.D.Pa.2001).

In deposition testimony, Cheryl Lewy demonstrated a basic understanding of the allegations, knowledge of the laws alleged to have been violated, and an intention and willingness to contest IAI's actions. Although Janice Winter demonstrated less understanding, she is assisted by her son-in-law, Glen Lewy, who is the settlor of the trust, an attorney, and fully knowledgeable about the details of this action. *See Randle v. Spectran*, 129 F.R.D. 386, 392 (D.Mass.1988) (finding that plaintiff was an adequate representative when fellow representatives were able to assist her and counsel agreed to advance the costs of litigation).

■ General knowledge and participation in discovery are enough to demonstrate representational adequacy. *Schwartz v. Sys. Software Assocs., Inc.*, 138 F.R.D. 105, 107–08 (N.D.Ill.1991); *Harman*, 122 F.R.D. 522, 528–29 (N.D.Ill. 1988); *Grossman v. Waste Mgmt., Inc.*, 100 F.R.D. 781, 790 (N.D.Ill.1984). "Also, it is familiar law that a class representative need not have personal knowledge of the evidence and the law involved in pursuing a litigation. It is the lawyer's task to prepare the case both on the facts and the law." *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 107 (S.D.N.Y.1993).

The trustees' capacity and willingness to prosecute this action vigorously through qualified counsel sufficiently protects and advances the interests of the entire class. *See In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 609 (D.Minn.2001). The trustees meet the adequacy-of-representation requirement.

### *Predominance and Superiority*

In addition to satisfying the requirements of rule 23.01, the action must also come within one of three categories described in Minn. R. Civ. P. 23.02. *See Peterson v. BASF Corp.*, 618 N.W.2d 821, 826 (Minn.App.2000) (stating "[o]nce appellants have satisfied the four prerequisites of rule 23.01, they must show that their proposed class meets one of the requirements of Minn. R. Civ. P. 23.02"), *review denied* (Minn. Jan. 26, 2001). The trustees contend that they meet the requirements of Rule 23.02(c). Under rule 23.02(c), a class action may be maintained if two basic conditions are met. First, common questions must predominate over individual issues, and second, the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Minn. R. Civ. P. 23.02(c). We address, first, predominance and, then, superiority.

### *Predominance*

■ The trustees challenge the district court's conclusion that common issues do not predominate. The district court ruled that the common legal issue was "whether IAI had a duty to notify [other fund shareholders] of upcoming short term capital gain distributions." But the district court found that question was secondary to the predominant factual question: "[A]re individual shareholders situated in circumstances similar to Plaintiff Lewy's that also caused them harm?"

■ No bright-line rules determine whether common questions predominate. *See Lockwood*, 162 F.R.D. at 580. Instead, a court must consider whether the generalized evidence will prove or disprove an element on a simultaneous, class-wide basis that would not require examining each class member's individual position. Thus, a class action is appropriate when common questions representing the significant aspect of a case can be resolved in a single action. *In re Workers' Comp.*, 130 F.R.D. at 108–09. The common question need not be dispositive of the entire action because "predominance" as used in the rule is not automatically equated with "determinative." *Id; see also Lockwood Motors*, 162 F.R.D. at 580 ("[c]ommon questions need only predominate; they need not be dispositive of the litigation").

■ "[P]redominance will be found where generalized evidence may prove or disprove elements of a claim." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 604 (D.Minn.1999) (citation omitted). As with the commonality and typicality requirements, the predominance inquiry is directed toward the issue of liability. "When determining whether common questions predominate courts 'focus on the

liability issue * * * and if the liability issue is common to the class, common questions are held to predominate over individual questions.' " *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48, 52 (S.D.N.Y.1987) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981)); *see also Lockwood Motors,* 162 F.R.D. at 580 (" 'the fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance' ") (quoting 3B *Moore's Federal Practice* § 23.45 at 23–306 to –07 (2d ed.1994)). Thus, we look first to the elements necessary to recover on the claim against IAI. To predominate, common issues must constitute a significant part of the individual cases. *Streich v. Am. Family Mut. Ins. Co.,* 399 N.W.2d 210, 217 (Minn.App.1987), *review denied* (Minn. Mar. 25, 1987).

The trustees assert that IAI breached a fiduciary duty by failing to tell shareholders about an upcoming short-term capital-gains distribution and by providing misleading information in the prospectus. Both parties agree that this case is governed by the substantive law of Delaware.

▉▉▉▉▉ Under Delaware law, a plaintiff claiming breach of fiduciary duty must prove by a preponderance of evidence that a fiduciary duty existed and that a fiduciary breached that duty. *See York Linings v. Roach,* 1999 WL 608850, at *2 (Del.Ch. 1999). "It is well established that directors of a Delaware corporation owe fiduciary duties to the corporation." *Id.* Furthermore, "under Delaware law there is a rule of *per se* damages for breach of the fiduciary duty of disclosure." *O'Reilly v. Transworld Healthcare, Inc.,* 745 A.2d 902, 917 (Del.Ch.1999).

If the trustees and their proposed class are to recover, the two elements for breach of a fiduciary duty would have to be established for all of the fund's shareholders. Evaluated solely on elements, common issues predominate. The district court, however, relied on causation, damages, and the lack of a finding of numerosity to justify its ruling against predominance. Because damages can be assumed per se for a breach of fiduciary duty and because the trustees satisfied numerosity, the district court's conclusion against predominance is not sustainable.

IAI argues that the court's holding can alternatively be sustained on the grounds that the measure of damages would be too difficult to calculate and would require hundreds of mini-trials. In *Keating v. Philip Morris, Inc.,* 417 N.W.2d 132, 137 (Minn.App.1987), we stated that if a different damages calculation would be required for each shareholder, the necessity of separate calculations weighs against satisfaction of the predominance requirement. But when injury and damage is capable of mathematical or formulaic calculation, individualized claims are not a barrier to managing the case as a class action. *Id.*

▉▉▉▉▉ If, however, the damages do not lend themselves to mechanical calculation, the necessity of a large number of mini-trials would cause the damage aspects to predominate and weigh against certification. *Windham* at 68; *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 455 (3d Cir.1977) (dicta); *Keating,* 417 N.W.2d at 137. But the mere fact that there are certain issues that may need to be determined on an individual basis does not necessarily preclude the satisfaction of the predominance requirement. *See* Newberg & Conte, *supra,* § 4.25 ("[t]he very definition of the requirement of the predominance of common questions contemplates that individual issues will usually remain after the common issues are adjudicated").

Courts frequently grant class certification despite individual differences in class

members' damages. *See White v. NFL,* 822 F.Supp. 1389, 1403–04 (D.Minn.1993); *B & B Inv. Club v. Kleinert's Inc.,* 62 F.R.D. 140, 144 (E.D.Pa.1974); *In re Memorex Sec. Cases,* 61 F.R.D. 88, 103 (N.D.Cal.1973); *Minnesota v. U.S. Steel Corp.,* 44 F.R.D. 559, 567 (D.Minn.1968). IAI contends that it will require a minimum of eight hours for damage calculations for each plaintiff and that that length of time should foreclose the possibility of a class action. The trustees dispute that estimate. But the necessity of calculating separate damages does not destroy the appropriateness of the class-action method. *See U.S. Steel,* 44 F.R.D. at 567. If IAI has breached a fiduciary duty to the class, then calculating the damages for all the affected shareholders in one action makes more sense then forcing each shareholder to bring a separate action just to split the damage-calculation time.

Common questions of law and fact predominate on the cause of damages. The fact that the amount of damages may vary, and thus require more or less time to calculate, does not defeat certification.

### Superiority

■■■■ Factors to consider in a "superiority" analysis include "manageability, fairness, efficiency, and available alternatives." *Streich,* 399 N.W.2d at 218 (citation omitted). The class action is most often needed in litigation in which individual claims are small. *Forcier v. State Farm Mut. Auto. Ins. Co.,* 310 N.W.2d 124, 130 (Minn.1981). When collective adjudication promises substantial efficiency benefits or makes it possible for class members with small claims to bring suit and enforce the substantive law, a class action is superior to other available methods for the fair adjudication of the controversy. *See Vernon J. Rockler & Co. v. Graphic Enter., Inc.,* 52 F.R.D. 335, 347 (D.Minn.1971) (" '[a] class action must be deemed the

only practical method of litigating * * * when the complex nature of the litigation and the comparatively small individual financial interests are considered' ") (quoting *Weiss v. Tenney Corp.,* 47 F.R.D. 283, 291 (S.D.N.Y.1969)). The trustees' counsel estimates that the damages will average only $3,000 per shareholder.

■■■■ The record discloses no unusual difficulties in management or notification of class members. The fund has records of all shareholders and no facts suggest that management of this class would impose problems. Both IAI and the trustees agree that Delaware law applies, so the court will not be confronted with complex choice-of-law issues. The trustees' counsel is experienced and has handled other similar actions.

Because this case presents no unusual management problems and will provide representation to an otherwise unrepresented class, the facts compel certification of a class action as the superior method of adjudication. We remand to the district court for certification of the class. In light of our determination, it is unnecessary to reach the trustees' third issue of whether the district court abused its discretion in limiting discovery of shareholder information to establish a class.

### II

■■■■ The trustees argue that the district court abused its discretion by not allowing them to amend their complaint to include largely unchallenged factual clarifications and an allegation relating to the risks involved in the equalization method of accounting.

■■■■ The district court has broad discretion to grant or deny leave to amend a complaint, and its ruling will not be reversed absent a clear abuse of discretion. *Fabio v. Bellomo,* 504 N.W.2d 758, 761

(Minn.1993). The only argument that the trustees advance as an abuse of discretion is that almost all the clarifications the trustees suggested in their proposed second amended complaint were unchallenged by IAI and, therefore, must be allowed. The trustees cite two foreign-jurisdiction cases to support their conclusion that clarification should be allowed.

But allowing amendment of the complaint is discretionary with the district court, and the exercise of discretion reasonably depends on the stage of the action. *See Tomlinson Lumber Sales, Inc. v. J.D. Harrold Co.*, 263 Minn. 470, 474–75, 117 N.W.2d 203, 207 (1962). Given the late stage at which the trustees moved to amend their complaint, the district court was within its discretion in refusing to allow the amendment.

## DECISION

The trustees have satisfied the numerosity, commonality, typicality, and representational-adequacy requirements of Minn. R. Civ. P. 23.01. They have also demonstrated that common legal issues predominate and that a class action is a superior method for resolving the dispute. We reverse and remand so that the district court may certify the trustees' proposed class. We affirm the district court's denial of the trustees' motion to amend their complaint.

**Affirmed in part, reversed in part, and remanded.**